# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued February 14, 2024         Decided July 26, 2024

No. 22-5170

ANDRES F. CABEZAS,
APPELLANT

v.

FEDERAL BUREAU OF INVESTIGATION,
APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:19-cv-00145)

---

*Brian D. Horwitz* argued the cause and filed the briefs for appellant.

*Johnny H. Walker III*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Brian P. Hudak* and *Jane M. Lyons*, Assistant U.S. Attorneys. *Kenneth A. Adebonojo*, Assistant U.S. Attorney, entered an appearance.

2

Before: PILLARD and WILKINS, *Circuit Judges*, and ROGERS, *Senior Circuit Judge*.

Opinion for the Court by *Senior Circuit Judge* ROGERS.

ROGERS, *Senior Circuit Judge*: Andres Cabezas appeals the grant of summary judgment to the Federal Bureau of Investigation on his motion pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for records relating to his conviction of receipt of child pornography, 18 U.S.C. § 2252A(a)(2). While his direct appeal of his conviction was pending, Cabezas submitted FOIA requests for records under his name or any identifier assigned to his name. When the FBI failed after six months to produce responsive records in its possession, he sued. The district court granted summary judgment to the FBI, finding that it had conducted a reasonable search, properly withheld documents pursuant to the FOIA and the Privacy Act, 5 U.S.C. § 552a, and disclosed all segregable information, and summarily denied Cabezas's motions for limited discovery and *in camera* review. Cabezas appeals, principally challenging the adequacy of the search. He raises multiple challenges, some without regard to statutory and procedural preconditions. For the following reasons, we affirm.

**I.**

In 2017, Cabezas was arrested in an FBI sting operation. Following his indictment for online enticement of a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b), he pled guilty on October 18, 2017, to receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2). He appealed his conviction and 151-month sentence to the U.S. Court of Appeals for the Eleventh Circuit. While his direct appeal was pending, Cabezas submitted FOIA requests in May

2018 to the U.S. Attorney General, the United States Marshals Service, and the FBI (Orlando Resident Agency) for records under his name or any identifier assigned to his name. His request extended to arrest reports, investigatory records, video tapes, telephonic recordings, and photographs. On June 25, 2018, the FBI acknowledged receipt of his request and notified him of related administrative matters, including copying fees. After six months had passed and the FBI had not turned over responsive records in its possession, Cabezas filed suit on January 22, 2019, in the U.S. District Court for the District of Columbia. He requested the court to declare that the FBI violated the FOIA and the Privacy Act, enjoin it from continued withholding of responsive records and order the release without delay, expedite the proceedings, and grant other appropriate relief. Compl. at 3.

On November 22, 2019, the FBI filed a motion for summary judgment on the grounds that the responsive records were properly withheld under FOIA Exemption 7(A), which permits withholding of records that could interfere with enforcement proceedings, and that Exemptions 3, 5, 6, 7(C), and 7(E) also applied. Cabezas filed an opposition on April 27, 2020, and a supplemental opposition on June 23, 2020. Six days later he moved to compel preservation of private email records that he alleged were generated from non-governmental email accounts in violation of FBI policy. By sworn declaration of July 22, 2020, the FBI replied that it had "followed the records management policies and procedures." Seidel Decl. ¶ 9 (July 22, 2020).

After the Eleventh Circuit affirmed Cabezas's guilty plea and sentence on December 5, 2019, *United States v. Cabezas*, 797 F. App'x 415, 417–19 (11th Cir. 2019), the FBI acknowledged that Exemption 7(A) was inapplicable and that its "main argument for withholding records [was] moot."

Status Report ¶ 3 (July 14, 2020). In total, the FBI released to Cabezas 176 pages in full, 41 pages and two videos in part, and withheld 74 pages in full (of which eleven were duplicative) under the FOIA and Privacy Act exemptions. The FBI also provided a *Vaughn* index describing each document withheld and the applicable FOIA exemption. *See Vaughn v. Rosen*, 484 F.2d 820, 826–28 (D.C. Cir. 1973).

On April 1, 2021, the FBI renewed its motion for summary judgment. Cabezas, in turn, filed a motion for summary judgment on November 15, 2021, and evidentiary motions for limited discovery and *in camera* review. The FBI did not oppose the evidentiary motions and instead conducted another search. In January and March 2022, the FBI made a supplemental release of audio recordings and photographs.

The district court granted summary judgment to the FBI. *Cabezas v. FBI*, No. 19-cv-145, 2022 WL 898789 (D.D.C. Mar. 28, 2022). It found that the FBI had conducted a reasonable search and properly withheld information pursuant to FOIA Exemptions 5, 6, 7(C), and 7(E), and the Privacy Act, and that the FBI had disclosed all segregable information. The court summarily denied the motion for limited discovery and the motion for *in camera* review. Order (Mar. 28, 2022). Thereafter, the court denied Cabezas's motion to alter or amend the judgment.

Cabezas appeals the grant of summary judgment, challenging the district court's conclusions that the FBI's search was adequate and its withholdings justified by FOIA exemptions, as well as the denial of his motions for limited discovery and *in camera* review. This court "review[s] *de novo* a district court's grant of summary judgment in favor of an agency which claims to have complied with FOIA." *Nation Mag., Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 889

(D.C. Cir. 1995). By contrast the court reviews the denial of the motions for discovery and *in camera* review for abuse of discretion. *Montgomery v. IRS*, 40 F.4th 702, 713 (D.C. Cir. 2022); *Cruz v. McAleenan*, 931 F.3d 1186, 1191 (D.C. Cir. 2019).

**II.**

Cabezas challenges the district court's findings under the FOIA, not the Privacy Act. Of his multiple challenges, some are properly preserved for review. Others, however, are forfeited by failure to be raised in his opening brief. *Al-Tamimi v. Adelson*, 916 F.3d 1, 6 (D.C. Cir. 2019). Still others improperly attempt to incorporate by reference arguments presented in the district court, *id.*, and this court will consider only those addressed in the FBI's responsive appellate brief, *see id.* at 6–7. Our analysis addresses his challenges by subject.

The FOIA "was enacted to facilitate public access to Government documents" and "was designed 'to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny.'" *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (quoting *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976)). But "[w]hile transparency and government accountability are at the heart of FOIA's mandate, Congress exempted certain . . . records from disclosure to protect important governmental and private interests in confidentiality." *Bartko v. U.S. Dep't of Just.*, 898 F.3d 51, 61 (D.C. Cir. 2018). The FOIA requires agencies to disclose records upon request unless the records fall within one of nine exemptions, which are to be "narrowly construed," *Milner v. Dep't of the Navy*, 562 U.S. 562, 565 (2011) (quoting *FBI v. Abramson*, 456 U.S. 615, 630 (1982)), yet "intended to have

meaningful reach and application," *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989).

**A.**

To prevail on summary judgment against a challenge to the adequacy of an agency's search, "the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). The agency must also provide a "reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Id.* "Agency affidavits are accorded a presumption of good faith[.]" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). On the other hand, if the plaintiff provides "'countervailing evidence' as to the adequacy of the agency's search," *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 314 (D.C. Cir. 2003) (internal citation omitted), or "the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper," *Campbell v. U.S. Dep't of Just.*, 164 F.3d 20, 27 (D.C. Cir. 1998) (internal citation omitted).

The FBI submitted three sworn declarations from Michael G. Seidel, Section Chief of the Record/Information Dissemination Section, dated July 22, 2020, March 2, 2021, and March 11, 2022, and one sworn declaration from David M. Hardy, the former Section Chief, dated November 20, 2019. These affidavits were designed to demonstrate that the FBI had made a good faith effort to conduct a reasonable search for the records Cabezas requested. The FBI initially searched the Central Records System index, which is "an extensive system

of records" consisting of files compiled and maintained by the "FBI in the course of fulfilling its integrated missions and functions as a law enforcement, counterterrorism, and intelligence agency." Seidel Decl. ¶ 12 (Mar. 2, 2021). The FBI used Cabezas's names and identifiers: Andres Fernando Cabezas, Andres F. Cabezas, and Andres Cabezas, which resulted in locating material responsive to Cabezas's FOIA request.

In response to Cabezas's argument in moving for summary judgment that it failed to disclose all relevant records, the FBI conducted an additional search of the Central Records System. It also conducted a targeted search of the Tampa Field Office, contacting the special agent who maintained Cabezas's criminal file. These supplemental searches resulted in the release of additional records to Cabezas. Even though the FBI's declaration about the Tampa Field Office search was thin regarding the identity of the custodian of the records, *see* Oral Arg. Rec. at 44:40–47:20 (Feb. 14, 2024), the affidavits described the FBI's methodology for its searches, which databases it searched, and how the search method was calculated to locate responsive records. *See Oglesby*, 920 F.2d at 68.

**1.**

Incomplete records. To the extent Cabezas contends that the FBI did not maintain "complete records" in the Central Records System, he overlooks records released in response to the supplemental targeted search in the Tampa Field Office and refers to likely emails on a commercial server and records on his iPhone. *See* Appellant's Br. 13.

Cabezas incorporates by reference his argument in the district court that emails on a commercial Google email

account used by FBI agents in his case should have been released, relying on an affidavit from a digital evidence forensic expert. His FOIA request was limited to "records under [his] name and/or any identifier assigned to [his] name." FOIA Request at 1 (May 9, 2018). These email messages were "serialized," (i.e., "assigned a document number in the order in which the document is added to the file," Seidel Decl. ¶ 13 (Mar. 2, 2021)), and released to Cabezas.

With regard to messages exchanged with the undercover agents and contained on his iPhone that Cabezas argued in the district court should have been released, the FBI explained that these too were serialized into Cabezas's case file. Seidel Decl. ¶¶ 14–15 (Mar. 11, 2022). The FBI uncovered no other records during its reasonable search relating to Cabezas's iPhone. *Id.* ¶ 15. In the district court, Cabezas had relied on the affidavit of his brother, Luis, who stated in a sworn affidavit after inspecting Cabezas's iPhone, which the FBI had seized, that he was able to access the messaging screen but could not locate "any of the text message conversations involved in [Cabezas's] case, nor the information [Cabezas] was asking for." Luis F. Cabezas Aff. ¶ 23. The affidavit did not offer information on the substantive content. On appeal Cabezas does not develop the argument why there should be additional records before this court. "Mentioning an argument 'in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones' is tantamount to failing to raise it." *Al-Tamimi*, 916 F.3d at 6 (quoting *Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005)).

**2.**

Records not uploaded to files. Cabezas renews his argument that the FBI failed to upload all the responsive

records to the Central Records System, stating that he "used the fruits of his discovery in his criminal case to show that the FBI's records and record keeping policies were deficient." Appellant's Br. 20.  The district court explained that Cabezas was conflating records in his criminal discovery and those in the FBI's possession when it received his FOIA request.  On appeal Cabezas neither explains why the district court erred nor describes what other locations might contain responsive records that have not been searched using reasonable means.

**B.**

The exemptions.  Cabezas contends that responsive records were improperly withheld under FOIA Exemptions. The FBI relied on Exemptions 5, 6, and 7(C) & (E).  Cabezas's challenge proves to be unpersuasive as to every exemption.

Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency," 5 U.S.C. § 552(b)(5), and incorporates "the deliberative process privilege, attorney-client privilege, and attorney work-product privilege." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 267 (2021).  The FBI withheld two passages of a non-public "detailed operational plan containing information related to [Cabezas's] arrest" under Exemption 5: Bates No. 122, for which the FBI invoked the deliberative process privilege and attorney-client privilege, and Bates No. 125, for which the FBI invoked the deliberative process privilege.  Seidel Decl. ¶ 20(b) (Mar. 11, 2022).

The deliberative process privilege "covers 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Dep't*

*of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975)). To fall within its protections, the document must be predecisional and deliberative. *Sierra Club, Inc.*, 592 U.S. at 268. A document is predecisional if it was "generated before the agency's final decision on the matter," and deliberative if it was "prepared to help the agency formulate its position." *Id.* The agency must also demonstrate that disclosing the records would not foreseeably harm an interest protected under the relevant exemption by "concretely explain[ing] how disclosure 'would' — not 'could' — adversely impair internal deliberations." *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369–70 (D.C. Cir. 2021) (quoting *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020)).

The FBI properly relied on the deliberative process privilege to withhold portions of an "FBI operational plan," including material containing "suggestions regarding FBI operational strategies" and "memorializ[ing] communications with an Assistant United States Attorney . . . who . . . provided advice regarding investigative strategy related to [Cabezas's] case." Seidel Decl. ¶ 37 (Mar. 2, 2021). This material is predecisional. It was prepared prior to the specific operation, and it does not "reflect final agency decisions." *Id.* The material is also deliberative. The FBI explained that the Assistant United States Attorney's "recommendations and legal analysis were contingent on predicted scenarios that were only speculated to potentially occur." Seidel Decl. ¶ 18 (Mar. 11, 2022). The FBI further explained how release of this information could harm future FBI investigations by creating a chilling effect on the FBI's employees' willingness to share ideas and would damage the integrity of the FBI's investigative plans and strategies. Seidel Decl. ¶ 37 (Mar. 2, 2021).

Cabezas insists that the FBI improperly invoked the deliberative process privilege to protect "a fact-based arrest operations plan," which has no relation to "agency [policy oriented] *judgment*." Appellant's Br. 14–16 (internal citation omitted). He relies on *Shapiro v. CIA*, 247 F. Supp. 3d 53 (D.D.C. 2017). There the district court suggested that a draft Operations Plan on preparations for an American delegation to attend the funeral of South Africa President Nelson Mandela might not be deliberative. *Id.* at 63–64. Upon *in camera* review the court concluded that the Plan was both predecisional and deliberative. *Shapiro v. CIA*, 272 F. Supp. 3d 115, 118 (D.D.C. 2017), *vacated as moot*, No. 22-5144, 2024 WL 1061322 (D.C. Cir. Mar. 8, 2024). Given the nature of the sting investigation of Cabezas and others, Cabezas provides no basis for this court to conclude that the FBI has mischaracterized the content of the material withheld under Exemption 5. The FBI's sworn declarations state how the withheld records fall within the deliberative process privilege of Exemption 5. Cabezas points to nothing in the record to the contrary. *See Watkins L. & Advoc., PLLC v. U.S. Dep't of Just.*, 78 F.4th 436, 451 (D.C. Cir. 2023).

The FBI also invoked two other FOIA Exemptions to justify redaction of personal identifying information for government employees and various third parties. Exemption 6 protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Because the text of "Exemption 7(C)'s privacy [provision] is broader than . . . [that] in Exemption 6," *U.S. Dep't of Just. v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 756 (1989), the court need not "consider Exemption 6 separately," *Roth v. U.S. Dep't of Just.*, 642 F.3d 1161, 1173 (D.C. Cir. 2011).

12

Exemption 7(C) protects "records or information compiled for law enforcement purposes . . . to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). It requires the court to "balance the . . . privacy interest against the public interest in disclosure." *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 171 (2004). The requestor must show that there is a significant public interest in the requested information and that the information is "likely to advance that interest." *Id.* at 172.

Cabezas does not challenge that the records at issue were "compiled for law enforcement purposes," 5 U.S.C. § 552(b)(7). Instead he asserts that the public interest in his case outweighs the privacy interests of persons whose information was redacted. Appellant's Br. 13. In his view, the multiple instances of alleged misconduct by FBI agents during his investigation that he has identified would establish a significant public interest in learning the withheld identities. Cabezas alleges that (1) FBI case agents "potentially destroyed iPhone records and evidence" and failed to upload these records to the Central Records System, Cabezas's Mem. for Summ. J. at 18 (citing his brother's affidavit); (2) in 2013 an FBI special agent used his home computer in violation of FBI policy; (3) another agent created a Craigslist posting on an unauthorized T-Mobile cellphone; and (4) the FBI's attempt to return his cellphone while he was in prison constitutes misconduct because the iPhone was forfeited and in evidence.

The FBI invoked Exemption 7(C) to withhold identifying information of FBI special agents and professional staff, an Assistant United States Attorney and other local law enforcement personnel, third parties mentioned in investigative records, a third party of investigative interest to the FBI, and

an individual who provided information to the FBI in the course of the investigation of Cabezas. Each of these individuals has a cognizable privacy interest. *E.g.*, *Schrecker v. U.S. Dep't of Just.*, 349 F.3d 657, 661 (D.C. Cir. 2003); *Nation Mag., Wash. Bureau*, 71 F.3d at 894. Still, "where there is a privacy interest protected by Exemption 7(C) and the public interest . . . asserted is to show that responsible officials acted negligently or otherwise improperly in the performance of their duties," information may be released if the requester "produce[s] evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Favish*, 541 U.S. at 174; *see SafeCard Servs., Inc.*, 926 F.2d at 1206.

Cabezas maintains that the instances of alleged FBI misconduct were sufficient to overcome the privacy interests of an unspecified number of these individuals. Appellant's Br. 13, 18. He did not develop these claims on appeal, opting instead to incorporate by reference his arguments in the district court. *See* Appellee's Br. 32. Reliance on incorporation by reference to make arguments on appeal may not forfeit all of Cabezas's claims to the extent the FBI has responded to some in its appellate brief. *See* Appellees' Br. 32–34; *Al-Tamimi*, 916 F.3d at 6–7. But vague allegations and essentially "bare suspicion[s]" are not "evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Favish*, 541 U.S. at 174; *see Kowal v. U.S. Dep't of Just.*, No. 22-5231, 2024 WL 3418844, at *5 (D.C. Cir. July 16, 2024); *SafeCard Servs., Inc.*, 926 F.2d at 1206. Cabezas has not proffered such evidence.

Additionally, the FBI invoked Exemption 7(E) to withhold undercover communications used in the investigation of Cabezas, the operational plan to which Exemption 5 applies in part, and the details of investigative databases and their search

results. Exemption 7(E) provides for the withholding of law enforcement records that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). The exemption "only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009) (internal quotation omitted).

Cabezas stated during oral argument in this court that he had challenged the FBI's invocation of Exemption 7(E) in the district court and was now replying to the FBI's brief. Oral Arg. Rec. at 6:43–7:40 (Feb. 14, 2024). He did not include an objection in his opening brief, however, *see Al-Tamimi*, 916 F.3d at 6, and offers no persuasive explanation for his failure. On this record, Exemption 7(E) suffices to support the FBI's withholding of details about an undercover operation, the operational plan, and database information and search results.

Cabezas's other preserved objections to the district court's FOIA findings lack merit. For instance, as an example of the FBI's inappropriate invocation of Exemptions 6 and 7(C), Cabezas speculates that the FBI withheld his given alias in documents concerning the indictment of an unidentified person in the Eleventh Circuit. Appellant's Br. 21. The FBI explained that the redacted name is not that of Cabezas, but of a "third party of investigative interest." Seidel Decl. ¶ 19(e) (Mar. 11, 2022); *see also* Oral Arg. Rec. at 47:40–48:12 (Feb. 14, 2024).

**C.**

Change of agency position. Cabezas's suggestion in his reply brief that the FBI has changed its position in this court regarding allegations of misconduct is not well taken. Judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000)). The FBI agreed with the district court that Cabezas "alluded to government misconduct but he fails to identify any specific misconduct." Opp'n to Pl.'s Mot. to Alter or Amend J. at 3 (May 6, 2022) (internal citation omitted).

Cabezas's view that the FBI "acknowledges that [he] specified the alleged misconduct," Reply Br. 8, shows only the FBI now describes his allegations as unsupported. The FBI has not conceded that Cabezas's allegations were of specific misconduct. The FBI states instead that Cabezas alleged "purported misconduct" was never developed in this court. Appellee's Br. 32. This shows no inconsistency in the FBI's position that would warrant application of judicial estoppel.

**D.**

Remand for findings. Finally, Cabezas seeks a remand for development of an adequate record on the ground that the district court abused its discretion by failing to provide any reasoning for denying his motions for limited discovery and for *in camera* review. He relies on *Summers v. Department of Justice*, 140 F.3d 1077, 1078 (D.C. Cir. 1998). Appellant's Br. 10. Unlike there, no such abuse of discretion occurred here. The reason for summary denial of his discovery and *in camera* motions is self-evident in view of the district court's reasons

for granting summary judgment to the FBI. *See Pardo-Kronemann v. Donovan*, 601 F.3d 599, 612 (D.C. Cir. 2010). Given the evidence of an adequate search, *see DiBacco v. U.S. Army*, 795 F.3d 178, 188 (D.C. Cir. 2015), and Cabezas's failure to "provide 'countervailing evidence,'" *Iturralde*, 315 F.3d at 314 (internal citation omitted), in the district court or to proffer such evidence on appeal, a remand would serve no purpose.

Accordingly, the court affirms the judgment of the district court granting summary judgment to the FBI and the order denying Cabezas's motions for limited discovery and for *in camera* review.