# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

**No. 23-5235**

**September Term, 2024**

FILED ON: DECEMBER 26, 2024

LASSANA MAGASSA,
                APPELLANT

v.

FEDERAL BUREAU OF INVESTIGATION,
                APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:19-cv-01952)

---

Before: HENDERSON and WALKER, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge.*

## J U D G M E N T

This appeal was considered on the record from the United States District Court for the District of Columbia and on the briefs filed by the parties. *See* Fed. R. App. P. 34(a)(2); D.C. Cir. R. 34(j). The Court has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). It is

**ORDERED** and **ADJUDGED** that the judgment of the district court be **AFFIRMED**.

## I.

This suit concerns Dr. Lassana Magassa and his interactions with the Federal Bureau of Investigation. As Dr. Magassa alleges, he was working at the Seattle airport, a position for which he passed a U.S. government background check, when he expressed interest in law enforcement careers. In 2015, he sat for a FBI job interview, but he declined to become a government informant. A year later, his security badge was revoked, leading to his "constructive discharge" from the airport job. J.A. 9.

On February 14, 2017, Dr. Magassa submitted a Freedom of Information Act and Privacy Act request for any FBI files about himself. He "authorize[d]" the FBI to spend "up to two hours searching for responsive records, but no more." J.A. 53. The FBI acknowledged the request that month but took no immediate action. In January 2018, counsel for Dr. Magassa followed up, seeking a response. The FBI then produced 19 pages of redacted documents but refused to confirm or deny whether Dr. Magassa was on a watchlist. Dr. Magassa administratively appealed the redactions, but his appeal was denied.

1

On June 28, 2019, Dr. Magassa filed this suit, alleging that the FBI failed to conduct a proper search and inappropriately redacted the records it did find. While litigation was ongoing, the FBI identified and released eight additional pages of responsive documents. The parties then cross-moved for summary judgment. As part of its briefing, the FBI provided the district court with two declarations by Michael G. Seidel, the Section Chief of the FBI's Record/Information Dissemination Section, who explained and justified the FBI's redactions. The FBI also filed a classified ex parte submission.

The district court granted the FBI's summary judgment motion and denied Dr. Magassa's motion. The court first found that the search had been "adequate," J.A. 103, as the FBI's procedures were "reasonably calculated" to produce the relevant records, J.A. 102. Second, the court found that each redaction "appropriately invoked" a FOIA exemption. J.A. 103–04. Third, the court held that the FBI's refusal to confirm or deny Dr. Magassa's inclusion on a watchlist—known as a "*Glomar* response"—was "justifie[d]." J.A. 110. Dr. Magassa appealed.

**II.**

We review a grant of summary judgment de novo. *See Emuwa v. U.S. Dep't of Homeland Sec.*, 113 F.4th 1009, 1015 (D.C. Cir. 2024).

**A.**

We agree that the FBI's search was adequate. To discharge its FOIA obligations, an agency must demonstrate that it "conducted a search reasonably calculated to uncover all relevant documents." *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 368 (D.C. Cir. 2020) (quoting *Weisberg v. Dep't of Just.*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)). An agency typically makes this showing with a "reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Id.* (quoting *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). While an agency must attempt to find *all* relevant files, not simply *some* such files, *see, e.g.*, *Oglesby*, 920 F.2d at 68 ("[T]he agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested."), we presume that affidavits are provided in "good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Machado Amadis*, 971 F.3d at 368 (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)).

The first Seidel declaration carries this burden. It stated that the FBI conducted a search using Dr. Magassa's full name, along with a "three-way phonetic breakdown." J.A. 28. The agency searched the "Sentinel" and "Automated Case Support" databases, procedures that check hundreds of millions of documents. *See* J.A. 25–27.[1] While this issue would be clearer if Mr. Seidel had stated that these databases were "the *only* possible place[s] that responsive records [were] likely to be located," the FBI's explanation is sufficient for us to conclude that "no other record system was likely to produce responsive documents." *Oglesby*, 920 F.2d at 68 (emphasis in original). Notably, the databases in question include "all FBI generated records" created since 2012 as well as all "pertinent investigative information" from before 2012. J.A. 25–26. And we have previously held that nearly identical searches suffice. *See Cabezas v. FBI*, 109 F.4th 596, 602–03 (D.C. Cir. 2024); *Kowal v. U.S. Dep't of Just.*, 107 F.4th 1018, 1027–29 (D.C. Cir.

---

[1] We again note that Dr. Magassa "authorize[d]" the FBI to "spend up to two hours searching for responsive records, but no more." J.A. 53.

2

2024).

Dr. Magassa has provided only "purely speculative claims" about missing documents. He never explains what additional locations he would like the FBI to search and inappropriately reads *Campbell v. Department of Justice*, 164 F.3d 20 (D.C. Cir. 1998), to suggest that a search according to standard procedures is always inadequate. But in *Campbell*, we emphasized that "in most cases, the FBI need not" go beyond its standard search practices unless there is evidence that the agency has "information suggesting the existence of documents that it could not locate without expanding the scope of its search." *Id.* at 28. Dr. Magassa provides no such information here.

**B.**

The district court also correctly upheld the application of three FOIA exemptions to these records. An agency seeking to employ a FOIA exemption must "carry its burden to prove the applicability" of that provision via affidavit. *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009). We presume good faith; the affidavit's explanation need only "appear[] 'logical' or 'plausible.'" *Id.* (quoting *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007)). But the agency must provide "reasonably specific detail," demonstrate the applicability of the exemption, and "not [be] controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Id.* (quoting *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984)).

First, the FBI properly redacted records under FOIA Exemption 3, which permits withholding if a matter is "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3). The National Security Act's protection of "intelligence sources and methods" is one such statutory exemption. *See Schaerr v. U.S. Dep't of Just.*, 69 F.4th 924, 930 (D.C. Cir. 2023); *see also* 50 U.S.C. § 3024(i)(1). Having reviewed the first Seidel declaration and the FBI's ex parte submission, we believe the agency has sufficiently explained that the documents relate to qualifying law enforcement techniques and procedures.[2]

Second, the FBI also properly applied Exemption 7(C) to redact the names of law enforcement personnel. Exemption 7(C) permits withholding records "compiled for law enforcement purposes," 5 U.S.C. § 552(b)(7), if an agency can show that "(1) disclosure could 'reasonably be expected to constitute an unwarranted invasion of privacy' and (2) the 'personal privacy interest' is not 'outweighed by the public interest in disclosure.'" *Elec. Priv. Info. Ctr. v. U.S. Dep't of Just.*, 18 F.4th 712, 718 (D.C. Cir. 2021) (quoting *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 160 (2004)). FBI personnel have "cognizable privacy interest[s]" under Exemption 7(C), *see Cabezas*, 109 F.4th at 606, so our only question is whether there is a public interest that outweighs the privacy interest. But even assuming that Dr. Magassa's identified public interest in "understanding the FBI's operations and activities" is cognizable under 7(C), *see* Appellant Br. at 29, he provides no explanation for how the names of FBI employees would advance that goal.

Third, the district court properly upheld the FBI's application of Exemption 7(E). Under this exemption, an agency may withhold records "compiled for law enforcement purposes" if release would disclose "techniques and procedures for law enforcement investigations or prosecutions . . . if such disclosure could reasonably be expected to risk circumvention of the

---

[2] To the extent Dr. Magassa objects to the ex parte submission, that argument was not raised below and is therefore forfeited. *See United States ex rel. Totten v. Bombardier Corp.*, 380 F.3d 488, 497 (D.C. Cir. 2004).

3

law." 5 U.S.C. § 552(b)(7). Exemption 7(E) is a "low bar" that only requires some "logical[]" demonstration of how circumvention might occur. *Kowal*, 107 F.4th at 1033 (quoting *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011)). At issue here is information about the FBI's operations, including internal websites, case file numbers, information collection methods, polygraph examination practices, and details of specific investigations. The first Seidel declaration adequately explained how these information categories could plausibly lead to circumvention of the law by alerting the subjects of investigations or informing would-be criminals about how to evade law enforcement. For those reasons, we have previously upheld similar redactions under Exemption 7(E). *See, e.g.*, *id.* (upholding the redaction of information about agency decision-making, databases, and files).

## C.

The district court correctly approved the FBI's "*Glomar* response." Agencies may invoke *Glomar* "if the fact of the existence or nonexistence of agency records falls within a FOIA exemption." *Wolf*, 473 F.3d at 374. Since *Glomar* is merely one application of the general FOIA exemptions, our analysis "appl[ies] the general exemption review standards established in non-*Glomar* cases." *Id.*

Dr. Magassa seeks information about his presence or nonpresence on FBI terrorism watchlists. The second Seidel declaration explained that those records' existence or nonexistence would fall within Exemption 7(E).[3] It stated that the program would be less effective if watchlist membership could be ascertained, as individuals could then "avoid detection or develop countermeasures." J.A. 91. Moreover, a hostile actor could aggregate watchlist placements to "construct a picture" of nonpublic watchlist criteria, J.A. 93, and "adjust their behavior to avoid being identified as a threat," J.A. 92. These detailed justifications more than meet the low plausibility bar we require under Exemption 7(E).[4]

For these reasons, we **AFFIRM** the district court.

\* \* \*

This disposition is unpublished. *See* D.C. Cir. R. 36(d). The Clerk is directed to withhold issuance of the mandate until seven days after the resolution of a timely petition for rehearing or rehearing en banc. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41(a)(1).

**<u>Per Curiam</u>**

---

[3] The second Seidel declaration also justified the *Glomar* response under Exemption (j)(2) of the Privacy Act. *See* 5 U.S.C. § 552a(j)(2).

[4] Dr. Magassa also contends that the FBI cannot provide a *Glomar* response because it has acknowledged the watchlist's existence. This argument appears for the first time in the reply brief and is therefore forfeited. *See Nat. Res. Def. Council v. U.S. Nuclear Regul. Comm'n*, 879 F.3d 1202, 1214 n.\* (D.C. Cir. 2018). But in any event, this argument confuses revealing Dr. Magassa's presence or nonpresence on the watchlist with acknowledging the program's existence.

**FOR THE COURT:**
Mark J. Langer, Clerk

BY:    /s/
Michael C. McGrail
Deputy Clerk