# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued January 15, 2025        Decided June 10, 2025

No. 23-5180

DAVID J. RUDOMETKIN,
APPELLANT

v.

UNITED STATES OF AMERICA,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:20-cv-02687)

———

*Charles E.T. Roberts*, appointed by the court, argued the cause as *amicus curiae* in support of appellant. With him on the briefs was *Anthony J. Dick*, appointed by the court.

*David J. Rudometkin*, *pro se*, was on the briefs for appellant.

*Douglas C. Dreier*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Matthew M. Graves*, U.S. Attorney, and *Brian P. Hudak* and *Jane M. Lyons*, Assistant U.S. Attorneys.

Before: PAN and GARCIA, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*: In 2018, a military judge, Lieutenant Colonel Richard Henry, found Appellant David Rudometkin guilty of several offenses and sentenced him to seventeen years of confinement. *United States v. Rudometkin* ("*Rudometkin I*"), 82 M.J. 396, 397 (C.A.A.F. 2022). Another military judge, Colonel Douglas Watkins, denied Rudometkin's post-trial motion for a mistrial, which was based on the U.S. Army's subsequent suspension of Henry as a military judge for inappropriate conduct. *Id.* at 397-99. Soon after, the Secretary of Defense ("Secretary") appointed Watkins as the Chief Trial Judge of the Military Commissions Trial Judiciary.

When challenging his conviction, Rudometkin submitted Freedom of Information Act ("FOIA") requests to the Army and the U.S. Department of Defense ("Department"), seeking the Army's investigatory and disciplinary records of Henry and the Department's records regarding the nomination, selection, and appointment of Watkins as the Chief Trial Judge. The Government either did not meaningfully respond to the requests or rejected them pursuant to exemptions under FOIA. FOIA mandates the disclosure of documents held by a federal agency unless the documents fall within one of nine enumerated exemptions. *See* 5 U.S.C. § 552(a)-(b). Exemption 5 under FOIA "incorporates the privileges available to Government agencies in civil litigation. That list includes the deliberative process privilege, attorney-client privilege, and attorney work-product privilege." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 267 (2021).

In 2020, Rudometkin filed a *pro se* complaint in the District Court, challenging the Government's withholding of records. Notably, Rudometkin's original FOIA complaint related to his FOIA request for the Army's investigatory and disciplinary records of Henry; however, he subsequently amended the complaint, and the amended complaint only referenced his FOIA request for the Department's records concerning Watkins's selection as Chief Trial Judge. During the next year, the Government produced a set of responsive records, with some information redacted pursuant to FOIA exemptions.

After granting in part and denying in part the Government's original motion for summary judgment as to the adequacy of its search for records and claimed withholdings, the District Court eventually granted the Government's renewed motion for summary judgment and denied Rudometkin's cross-motion for summary judgment. *Rudometkin v. United States* ("*Rudometkin II*"), No. 20-cv-2687, 2023 WL 4762574, at *1 (D.D.C. July 26, 2023). The trial court concluded that the Government had adequately proven the adequacy of its search for responsive records, that the Government had appropriately withheld the remaining records pursuant to Exemption 5's deliberative-process privilege, and that the Government had released all reasonably segregable, non-exempt information. *Id.* at *1-3. The court rejected Rudometkin's claim that a government misconduct exception existed for withholdings under Exemption 5's deliberative-process privilege. *See id.* at *2.

Throughout the litigation in the District Court, Rudometkin attempted to amend his complaint to incorporate the original complaint's claim regarding the Army's investigatory and disciplinary records of Henry. Nonetheless, the District Court denied Rudometkin's motions to amend the

complaint and motion for reconsideration of its denial to amend.

On appeal, Rudometkin challenges the District Court's grant of summary judgment in favor of the Government – specifically, the District Court's upholding of the Government's withholdings under Exemption 5's deliberative-process privilege. Rudometkin also contests the District Court's denial of his motions to amend his complaint to incorporate his original complaint.

For the reasons explained below, we reverse and remand in part and affirm in part. First, on the record before us, the Government did not establish that it properly withheld records under Exemption 5's deliberative-process privilege. While it is manifest that the disclosure of records regarding the discussions and deliberations surrounding Watkins's selection as Chief Trial Judge would foreseeably harm an interest protected by Exemption 5, the Government has not yet shown that it has released all reasonably segregable information within exempt records that could be disclosed without causing foreseeable harm to an interest protected by Exemption 5. *See Leopold v. U.S. Dep't of Just.*, 94 F.4th 33, 37 (D.C. Cir. 2024); 5 U.S.C. § 552(a)(8)(A)(ii), (b). Therefore, we reverse and remand on the segregability issue. Second, Rudometkin's FOIA claim regarding his original request for the Army's investigatory and disciplinary records of Henry is now live in a separate action. *See Rudometkin v. Wormuth*, No. 22-cv-01968 (D.D.C. Mar. 21, 2025). Accordingly, we affirm the District Court's denial of Rudometkin's October 2022 motion to amend his complaint to incorporate the original FOIA claim.

## I. BACKGROUND

### A. *Legal Background*

As noted above, FOIA charges federal agencies with disclosing agency records, upon request, unless one of nine statutory exemptions applies. *See Kowal v. U.S. Dep't of Just.*, 107 F.4th 1018, 1026-27 (D.C. Cir. 2024). As relevant here, Exemption 5 safeguards ''inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency.'' 5 U.S.C. § 552(b)(5). This exemption includes the deliberative-process privilege, which "shields documents 'reflecting advisory opinions, recommendations, and deliberations' that agencies use to make decisions." *Emuwa v. U.S. Dep't of Homeland Sec.*, 113 F.4th 1009, 1013 (D.C. Cir. 2024) (citation omitted). Importantly, the goal of the deliberative-process privilege is to "ensure[] that 'debate and candid consideration of alternatives within an agency' are not subject to public inspection." *Id.* (citations omitted).

In 2016, Congress enacted the FOIA Improvement Act to "impose[] additional, crosscutting obligations on each agency considering withholding information under any FOIA exemption." *Hum. Rts. Def. Ctr. v. U.S. Park Police*, 126 F.4th 708, 713-14 (D.C. Cir. 2025). First, an agency must still disclose information protected by an exemption unless it "reasonably foresees that disclosure would harm an interest protected by an exemption" or if "disclosure is prohibited by law." 5 U.S.C. § 552(a)(8)(A)(i). Second, an agency must "take reasonable steps to release any segregable, non-exempt information." *Hum. Rts. Def. Ctr.*, 126 F.4th at 717 (citation omitted). Specifically, agencies "must 'consider whether partial disclosure of information is possible whenever the agency determines that a full disclosure of a requested record

is not possible'" and "take reasonable steps necessary to segregate and release nonexempt information." *Leopold*, 94 F.4th at 37 (quoting 5 U.S.C. § 552(a)(8)(A)(ii)(I)-(II)).

### B. *Factual and Procedural Background*

In 2018, Military Judge Lieutenant Colonel Richard Henry, who was presiding over a general court-martial proceeding, found David Rudometkin guilty of rape, aggravated sexual assault, assault consummated by a battery, and conduct unbecoming of an officer (for committing adultery), and sentenced him to seventeen years of confinement and dismissal. *Rudometkin I*, 82 M.J. at 397. Following the court martial, the U.S. Army suspended Henry from his role as a military judge due to his inappropriate relationship with the wife of another officer who was a trial defense counsel at Fort Benning, Georgia. *See id.* The officer whose wife had a relationship with Henry did not represent Rudometkin in his court martial proceedings. *See id.* Nonetheless, Rudometkin moved for a mistrial, claiming that Henry was not impartial because Henry's "misconduct was similar to the adulterous misconduct for which [Henry] found [Rudometkin] guilty." *Id.* Military Judge Colonel Douglas Watkins presided over the post-trial proceedings and ultimately denied Rudometkin's motion, determining that Henry's failure to recuse himself did not create a risk of injustice or undermine the public's confidence in the judicial process. *See id.* at 397-99.

While the U.S. Army Court of Criminal Appeals initially reversed that decision and set aside Rudometkin's convictions, the U.S. Court of Appeals for the Armed Forces later reversed that ruling and remanded the case for further review because it concluded that Watkins did not clearly abuse his discretion in denying the mistrial motion. *See id.* at 399, 402.

Beginning in late 2018, Rudometkin submitted FOIA requests to the Army, seeking records regarding the Army's investigation of Henry, including disciplinary records. In the meantime, the Secretary of Defense had designated Watkins as the Chief Trial Judge. This designation occurred after the Department's Office of General Counsel ("OGC") had solicited views from the Judge Advocates General ("JAGs"), obtained recommendations, and submitted a consensus nomination to the Secretary. In 2019, Rudometkin submitted a FOIA request to the Department, seeking records concerning the nomination, selection, and appointment of Watkins as the Chief Trial Judge of the Military Commissions Trial Judiciary.

Following the Government's rejection of some requests and failure to substantively respond to other requests, Rudometkin brought the present FOIA action in the District Court in 2020. His original complaint sought disclosure of the Army's records related to the investigation and discipline of Henry. Rudometkin subsequently filed an amended complaint, which sought disclosure of the Department's records concerning the nomination, selection, and appointment of Watkins as the Chief Trial Judge. The amended complaint omitted any reference to Henry's records.

In 2021, the Government provided Rudometkin with 83 pages of responsive records for his FOIA request regarding Watkins, with some portions redacted pursuant to FOIA Exemptions 5 and 6. The Government later moved for summary judgment regarding its search for responsive records and withholdings. In support, the Government provided a *Vaughn* index, *see Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973), and declaration in which Mark Herrington, an associate deputy general counsel in the OGC, explained the Government's claimed exemptions.

8

Herrington's declaration divided the documents into two categories: (1) "the substance of the actual nominations and accompanying advice and recommendations," and drafts of those documents; and (2) "emails and internal [Department of Defense] memorandum provided by the General Counsel and other OGC attorneys advising the Secretary regarding the designation of COL Watkins …, and drafts of those documents." First Herrington Decl. ¶¶ 8-9. For the first category, Herrington averred that disclosure of the "information would cause harm to the Secretary's decision-making process, as it would hamper the unfettered and candid advice of those making recommendations to the Secretary if that advice is no longer kept confidential." *Id.* ¶ 8. Similarly, for the second category, Herrington claimed that "[p]ublic disclosure of the attorney-client communications would seriously disrupt open communication between the Secretary and his attorneys, as well as deprive government decision-makers of the full and candid advice of their counsel," and would "hamper the day-to-day workings of the Department, as senior attorneys would no longer feel free to convey their recommendations in formal written correspondence." *Id.* ¶ 9.

Throughout 2022, Rudometkin attempted to amend his complaint. Specifically, in April 2022, Rudometkin moved to amend because he neglected to incorporate by reference his original FOIA complaint regarding the Army's investigatory and disciplinary records of Henry into the first amended complaint. In June 2022, he again moved to amend the complaint to incorporate the original complaint and add a request for records for Henry's Army Grade Determination Board. Likewise, Rudometkin moved to amend his complaint in August 2022.

In September 2022, the District Court granted in part and denied in part, without prejudice, the Government's motion for

summary judgment, and denied Rudometkin's June 2022 motion to amend the complaint. As to the summary judgment motion, the court denied it with respect to the adequacy of the search because the Government failed to proffer any supporting evidence on its search for responsive records. In addition, the court denied the motion as to particular Exemption 5 deliberative-process privilege withholdings – specifically, documents concerning internal recommendations to the Office of Military Commissions regarding numbers and selection criteria, and Watkins's personal information (Documents 2 and 9 on the *Vaughn* index). It also denied the motion as to all claimed withholdings under Exemption 5's attorney-client privilege.

On the other hand, the District Court granted the motion as to other Exemption 5 deliberative-process privilege withholdings – namely, recommendations for Chief Trial Judge from the departing Chief Trial Judge and Navy and Air Force JAGs (Documents 4, 10, 20, 22, and 29 on the *Vaughn* index). In the court's view, the Government adequately justified those withholdings. With respect to Rudometkin's June 2022 motion to amend the complaint, the court held that he failed to exhaust administrative remedies for his request for Henry's records from the Army Review Boards Agency. In a separate order issued the same day, the District Court denied Rudometkin's August 2022 motion to amend as baseless.

A month later, Rudometkin moved for reconsideration of the District Court's denial of his motion to amend, arguing that the court failed to address his April 2022 motion. With the motion for reconsideration, Rudometkin enclosed the April 2022 motion to amend, which the court then mistakenly docketed as a new October 2022 motion. Nonetheless, the District Court subsequently denied the motion for

reconsideration and the alleged new motion to amend, explaining that it stood by its prior findings.

Around the same time, the Government renewed its motion for summary judgment. By this time, it had released a group of documents to Rudometkin (Documents 2, 9, and 30 on the *Vaughn* index). With the motion, the Government submitted a supplemental declaration from Herrington, which summarized its search for records, explained its reasoning for Exemption 5's deliberative-process privilege withholdings, and withdrew its assertions of attorney-client privilege withholdings. Specifically, Herrington described the remaining documents as the record of recommendations from the JAG of each military branch. He averred that "i[f] their recommendations were made public and conflicted with the ultimate decision, those officers could suffer negative impacts on their ability to lead and their careers." Second Herrington Decl. ¶ 11. Herrington also attested that he "reviewed the documents line by line and confirm[ed] that the non-exempt portions were segregated from the exempt portions and the non-exempt portions were produced." *Id.* ¶ 12.

Shortly thereafter, Rudometkin cross-moved for summary judgment to challenge the propriety of the Government's claimed withholdings. His primary claim was that the alleged evidence of government misconduct in Watkins's selection and nomination pierced any claimed privilege.

Ultimately, the District Court granted the Government's motion for summary judgment and denied Rudometkin's cross-motion for summary judgment. *Rudometkin II*, 2023 WL 4762574, at *1. The court first held that the Government had sufficiently demonstrated the adequacy of the search. *Id.* Second, the court found that the Government properly withheld the remaining records under Exemption 5's deliberative-

process privilege. *Id.* at \*1-2. Specifically, the court observed that the remaining records consisted of direct recommendations from subordinates to OGC or the Secretary, predecisional draft copies of those documents, and duplicate pages. *Id.* at \*1. It further reasoned that the Government had adequately explained how disclosure of such information would foreseeably cause harm; principally, disclosure of the solicited recommendations regarding the Chief Trial Judge would chill candid discussions about future candidates. *Id.* at \*2. In addition, the court rejected Rudometkin's claim that his allegation of government misconduct was relevant for purposes of the Exemption 5 analysis. *Id.* Third, the court concluded that the Government had shown that all reasonably segregable, non-exempt information had been disclosed to Rudometkin. *Id.* at \*3.

In 2024, we denied Rudometkin's motion for summary reversal and granted in part and denied in part the Government's motion for summary affirmance. In pertinent part, due to forfeiture, we granted summary affirmance as to the District Court's September 2022 order denying Rudometkin's June 2022 motion to amend his complaint and September 2022 minute order denying Rudometkin's August 2022 motion to amend his complaint. However, we denied summary affirmance as to the District Court's order granting the Government's renewed motion for summary judgment, and December 2022 minute order denying Rudometkin's October 2022 motion to amend his complaint.

Rudometkin now appeals the District Court's grant of the Government's renewed motion for summary judgment and the District Court's denial of his motion to amend the complaint to incorporate his original complaint. This court appointed an

*amicus curiae* ("Amicus") to present arguments on Rudometkin's behalf.[1]

## II. ANALYSIS

### A. *Standard of Review*

"We review *de novo* a district court's grant of summary judgment in favor of an agency which claims to have complied with FOIA." *Hum. Rts. Def. Ctr.*, 126 F.4th at 715 (internal quotation marks and citation omitted). In addition, we review for abuse of discretion the District Court's denial of a motion for leave to amend a complaint, "except for denials based on futility, which we review *de novo*." *Ramos v. Garland*, 77 F.4th 932, 940 (D.C. Cir. 2023).

### B. *The Government's Motion for Summary Judgment*

We first address the District Court's grant of summary judgment in favor of the Government. Rudometkin argues that the District Court improperly upheld the Government's withholdings under Exemption 5's deliberative-process privilege. We agree in part.

To warrant summary judgment, the Government must first demonstrate that the agency adequately searched for responsive records and "that the withheld documents are protected by Exemption 5['s deliberative-process privilege] because they are predecisional and deliberative." *Waterman v. Internal Revenue Serv.*, 61 F.4th 152, 158 (D.C. Cir. 2023). In

---

[1] The court expresses its gratitude to Charles E.T. Roberts, who presented oral argument on behalf of Appellant, and to his colleague Anthony J. Dick, who appeared with him on the briefs, for their fine service to the court.

other words, to fall within the deliberative-process privilege, a record must be ''generated before the agency's final decision on the matter,'' and ''prepared to help the agency formulate its position.'' *Cabezas v. FBI*, 109 F.4th 596, 604 (D.C. Cir. 2024) (citation omitted). Then, to withhold records covered by Exemption 5, the Government must further show that (1) it "reasonably foresees that disclosure would harm an interest protected by [that] exemption"; and (2) that it has "release[ed] any reasonably segregable information within the [exempt] record[s] that could be disclosed without causing reasonably foreseeable harm to an interest" protected by that exemption. *Leopold*, 94 F.4th at 37 (internal quotation marks and citations omitted); *see also* 5 U.S.C. § 552(a)(8)(A). Importantly, the Government may "justify withholding or redacting records category-of-document by category-of-document rather than document-by-document." *Am. Immigr. Laws. Ass'n v. Exec. Off. for Immigr. Rev.*, 830 F.3d 667, 675 (D.C. Cir. 2016) (cleaned up) (citations omitted). And we "may rely on non-conclusory agency affidavits demonstrating the basis for withholding if they are not contradicted by contrary evidence in the record or by evidence of the agency's bad faith." *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 361 (D.C. Cir. 2021).

At the outset, we note that, in their briefs to this court, Rudometkin and Amicus have not challenged the adequacy of the Government's search for responsive records. As such, Rudometkin has forfeited that challenge. *See Cabezas*, 109 F.4th at 602, 606 (stating that a party forfeits an argument by failing to raise it in its opening brief). Second, Rudometkin has not meaningfully challenged the Government's claim that the records at issue are covered by Exemption 5's deliberative-process privilege (*i.e.*, that the documents are predecisional and deliberative). He has thus forfeited such a challenge due to his failure to offer any non-cursory argument on the issue in his

briefs before this court. *See Khine v. U.S. Dep't of Homeland Sec.*, 943 F.3d 959, 967 (D.C. Cir. 2019) ("[I]t is not enough merely to mention a possible argument in the most skeletal way." (cleaned up) (citation omitted)).

On the basis of the record before us, we find that the Government has met the foreseeable harm standard, but it has not yet satisfied FOIA's segregability requirement. We therefore reverse and remand on the segregability issue.

### 1. *No Government Misconduct Exception Exists for FOIA Exemption 5.*

Rudometkin contends that a "government misconduct" exception exists for claims of privilege under Exemption 5. In his view, well-substantiated allegations of government misconduct render Exemption 5's deliberative-process privilege void. Our precedent, however, does not support Rudometkin's argument.

First, we have made clear that there is no controlling precedent recognizing a government misconduct exception to Exemption 5. *See Protect Democracy Project, Inc. v. Nat'l Sec. Agency*, 10 F.4th 879, 888-89 (D.C. Cir. 2021). Second, we have explained that contrary to Exemption 7 – which excludes disclosure of information that would constitute an unwarranted invasion of privacy and involves balancing various interests such as the interest in exposing government misconduct – "[n]o such balancing or consideration of public interest is called for under Exemption 5." *Id.* at 889. "The deliberative process privilege is a qualified privilege and can be overcome by a sufficient showing of need." *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997). However, "[t]his characteristic of the deliberative process privilege is not an issue in FOIA cases because the courts have held that the particular purpose for

which a FOIA plaintiff seeks information is not relevant in determining whether FOIA requires disclosure." *Id.* at 737 n.5.

Accordingly, we reject Rudometkin's claim that allegations of government misconduct can overcome Exemption 5's deliberative-process privilege.

### 2. *Foreseeable Harm Is "Manifest" from the Nature of the Documents.*

Rudometkin also asserts that the Government's declarations failed to establish foreseeable harm from the disclosure of its records. Specifically, he argues, *inter alia*, that the Government's claims of foreseeable harm are generic, conclusory, and speculative. We disagree because we conclude that foreseeable harm is manifest in the documents at issue.

"[T]o withhold records covered by Exemption 5 through the deliberative-process privilege, an agency must show that releasing the specific records sought would chill future internal discussions." *Emuwa*, 113 F.4th at 1013 (internal quotation marks and citation omitted). However, ''perfunctory statement[s] that disclosure of all the withheld information—regardless of category or substance—would jeopardize the free exchange of information between senior leaders within and outside of the agency will not suffice." *Reps. Comm.*, 3 F.4th at 370 (cleaned up) (citations omitted). Rather, an agency must concretely demonstrate "why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward." *Id.* At bottom, the agency must articulate the "link between the specified harm and specific information contained in the material withheld." *Id.* at 371 (citation omitted). However, even when an agency's declaration falls short of this standard, we will uphold the

agency's withholding of documents in rare situations when "the record establishes the unique sensitivity" of those documents, such that "the foreseeability of harm [is] manifest" from the "very context and purpose" of the documents. *Reps. Comm.*, 3 F.4th at 372; *see also Emuwa*, 113 F.4th at 1015.

In this case, the records relate to discussions and deliberations concerning a particularly sensitive personnel decision – the selection of a Chief Trial Judge by the Secretary of Defense with input from subordinates – which "make[s] the foreseeability of harm [from disclosure] manifest." *Reps. Comm.*, 3 F.4th at 372. Specifically, the release of recommendations, drafts, and other documents that would reveal internal discussions about the candidates, why the candidates were or were not selected, and the criteria for their selection, plainly would impair candid discussions of candidates and the selection process going forward, given that the successful candidate will have power and authority to affect the interests of the people involved in the selection process. "[T]he sensitivity of the context in which these [communications] arose as well as their subject matter, and the need for confidentiality in discussions of" the selection of a high-ranking position in the military "provide the particularized context for a finding of foreseeable harm." *Id.* Although the Government's declarations may take on the flavor of the boilerplate and generic assertions of foreseeable harm that we have rejected (*i.e.*, bare assertions of chill to future internal discussions), *see id.* at 370-72, the manifest nature of the harm in this case from the disclosure of the contested documents confirms that the Government's claims are not exaggerated.

Furthermore, the Government adequately justified its withholdings on a category-by-category basis rather than document-by-document. As explained above, the first

Herrington declaration separated the universe of records into two categories: (1) "the substance of the actual nominations and accompanying advice and recommendations," and drafts of those documents; and (2) "emails and internal [Department of Defense] memorandum provided by the General Counsel and other OGC attorneys advising the Secretary regarding the designation of COL Watkins …, and drafts of those documents." First Herrington Decl. ¶¶ 8-9. In addition, the second Herrington declaration grouped the remaining records into a single category: records of recommendations from the JAG of each military service. In both declarations, Herrington outlined the rationale for each category of Exemption 5 withholdings. Overall, these categories sufficiently indicate "the substance of the information contained" and "allow the court to assess the [Government's] representations of how release of the documents would result in" harm. *Bevis v. U.S. Dep't of State*, 801 F.2d 1386, 1390 (D.C. Cir. 1986). Moreover, "the documents within each category are sufficiently similar … and the categories are sufficiently well-defined and distinct" so as to permit this court to determine whether the Government properly invoked Exemption 5. *Am. Immigr. Laws.*, 830 F.3d at 675.

Although the Government's *Vaughn* index's descriptions of certain documents were too vague (*i.e.*, Documents 5, 6, 21, and 23), the detailed document descriptions in the second Herrington declaration demonstrate that the documents contain the sort of information that is exempt and fall within the categories identified by the Government.

We therefore conclude that the Government has sufficiently justified its Exemption 5 withholdings and has satisfied FOIA's foreseeable harm requirement.

### 3. *The Government's and the District Court's Segregability Analyses Are Incomplete.*

Finally, Rudometkin claims that the Government failed to show that it cannot release any reasonably segregable information from within exempt portions of the records without causing foreseeable harm. We agree. The Government's and the District Court's segregability analyses are insufficient under our precedent.

After the Government shows that a record includes exempt information, "it is 'entitled to a presumption that it complied with the obligation to disclose reasonably segregable material.'" *Flyers Rts. Educ. Fund, Inc. v. Fed. Aviation Admin.*, 71 F.4th 1051, 1057-58 (D.C. Cir. 2023) (cleaned up) (citation omitted). To rebut this presumption, the FOIA requester must introduce "evidence that would warrant a belief by a reasonable person that the agency failed to comply with its obligation." *Id.* at 1058 (internal quotation marks and citation omitted). However, despite this presumption, a district court must nonetheless "mak[e] an express finding on segregability." *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020) (citation omitted). In addition, "[e]ven if an exemption covers an entire agency record, the agency still must release any reasonably segregable information within the record that could be disclosed without causing reasonably foreseeable harm to an interest that the exemption protects." *Leopold*, 94 F.4th at 37.

The court's decision in *Leopold* controls the results here. There, we vacated a district court's grant of summary judgment in favor of an agency, where the agency failed to consider whether exempt portions of a record could be disclosed without causing foreseeable harm to the interests protected by FOIA Exemption 8. *Id.* at 37-39. The same judgment applies here.

In this case, Herrington attested in his declarations that he had conducted a line-by-line review of the documents, and determined that there was no further reasonably segregable information and that the non-exempt portions of the record were segregated from the exempt portions. Absent from Herrington's declarations, however, is a statement that the Government reviewed the exempt portions of the documents to assess "whether any information could be segregated and released without causing a foreseeable harm to the agency." *Emuwa*, 113 F.4th at 1017 (citation omitted) (applying *Leopold*). Instead, the Government considered segregability as to only "non-exempt portions" and "exempt portions of the records," without addressing foreseeable harm. Second Herrington Decl. ¶ 12; *see also* First Herrington Decl. ¶ 13. But *Leopold* requires independent consideration of whether any portion of a document, although exempt, could be segregated and released without causing foreseeable harm.

Moreover, the District Court's findings on segregability suffer from a similar flaw. Specifically, the court concluded that the Government disclosed "all reasonably segregable non-exempt information." *Rudometkin II*, 2023 WL 4762574, at *3. Yet, by not addressing whether the Government demonstrated that exempt information could not be segregated and disclosed without causing foreseeable harm, the District Court's decision fails the test prescribed by *Leopold*.

The Government claims that Rudometkin forfeited any segregability argument by failing to contest segregability before the District Court. The Government is mistaken. We have made it clear that the District Court "has the obligation to consider the segregability issue *sua sponte*, regardless of whether it has been raised by the parties" and have "many times remanded in cases where the district court had failed to rule on segregability." *Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d

771, 776 (D.C. Cir. 2002). "The segregability requirement . . . extends to both steps of FOIA's sequential inquiry: Even if an exemption covers an entire agency record, the agency still must release any reasonably segregable information within the record that could be disclosed without causing reasonably foreseeable harm to an interest that the exemption protects." *Leopold*, 94 F.4th at 37. Therefore, if the record from the District Court does not confirm that exempt information could not be segregated and disclosed without causing foreseeable harm, then the record is not adequate to support the Government's claim of compliance with FOIA's segregability requirement.

Accordingly, we reverse the District Court's grant of summary judgment to the Government and remand the case for further proceedings on the segregability question.

## C. *Rudometkin's Motion for Leave to Amend the Complaint*

Finally, we turn to the District Court's denial of Rudometkin's October 2022 motion to amend his complaint. Rudometkin argues that the District Court abused its discretion by refusing to grant his April 2022 and October 2022 motions to amend his complaint and by failing to provide a rationale for denying him leave to reincorporate his original complaint. In his view, the District Court – when denying his motion for reconsideration of his motion to amend – confused his original FOIA claim for the Army's investigatory and disciplinary records of Henry with his subsequent request for Henry's grade determination board records; therefore, the District Court's ruling did not address the original FOIA claim.

However, after oral argument, Amicus and the Government advised this court that Rudometkin is now litigating his FOIA claim related to the Army's investigatory and disciplinary

records of Henry in *Rudometkin v. Wormuth*, and that the district court in that action has denied the Government's motion to dismiss that claim. No. 22-cv-01968 (D.D.C. Mar. 21, 2025). Consequently, they request that this court affirm the District Court's denial of the leave to amend on the alternative ground that the claim Rudometkin sought to reincorporate is now live in a separate action in the U.S. District Court for the District of Columbia.

We agree. Indeed, we have made clear that "a plaintiff has no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant." *Baird v. Gotbaum*, 792 F.3d 166, 171 (D.C. Cir. 2015) (citation omitted). Reversing the District Court's judgment and remanding the case to permit Rudometkin to reincorporate his original FOIA complaint in this action would create such an issue. As such, we affirm the District Court's judgment on this ground. *See id.* ("[A]s an appellate court, we can 'affirm the District Court on any valid ground, and need not follow the same mode of analysis.'" (citation omitted)).

### III. CONCLUSION

For the reasons set forth above, we reverse the District Court's grant of the Government's renewed motion for summary judgment and remand for further proceedings as to the segregability issue. And we affirm the District Court's judgment as to Rudometkin's October 2022 motion for leave to amend the complaint.

*So ordered.*